UNITED STATES of America, Plaintiff,

v.

John C. THOMAS, Defendant.

No. 93–10053–01.

United States District Court,
D. Kansas.

Dec. 3, 1993.

William M. Zoffer and Robert D. Okum, U.S. Office of Consumer Protection, Washington, DC, for plaintiff.

Steve Robison, Wichita, KS, for defendant.

*MEMORANDUM AND ORDER*

PATRICK F. KELLY, Chief Judge.

The United States has charged defendant John C. Thomas, a licensed veterinarian, with four counts in the indictment. The first of the three counts all relate to Thomas's alleged transactions in purchasing bulk gentamicin between February, 1989 and December, 1990. The last of the four charges relates to Thomas's alleged sale of liquid gen-

tamicin in Oklahoma. Specifically, in connection with the earlier sale of bulk gentamicin, Thomas is charged with use of an adulterated drug in violation of 21 U.S.C. §§ 351(a)(5) and 360(b), and misbranding of an animal drug in violation of 21 U.S.C. § 352(b) and (f). Thomas is also charged with conspiracy to commit both crimes. Finally, in connection with the Oklahoma sale of liquid gentamicin, Thomas is charged with a further count of misbranding of an animal drug.

In the present context the terms "adulterated" and "misbranding" have very specific statutory meanings and are not to be understood in their ordinary usage. Under the scheme created by the Food and Drug Act, an "adulterated" animal drug simply means any new animal drug which has not been approved by the Food and Drug Administration (FDA). Such drugs without FDA approval are deemed by statute to be unsafe. 21 U.S.C. § 360b(a)(1). "Bulk drugs," as used in this context, means the active ingredient raw materials which are mixed by veterinarians into a final form which they then use on their animal patients.

"Misbranding" of an animal drug under 21 U.S.C. § 352 may take several forms. Relevant here are subsections (b) and (f) of § 352, which require animal drugs to be labeled as to their source, nature, and appropriate uses. The FDA alleges in the misbranding counts that Thomas failed to use the particular labels required by law on the gentamicin which he purchased and used.

The FDA has the responsibility of ensuring that drugs used in the treatment of animals are safe and effective. For many animal diseases, however, there are no effective drugs with FDA approval. For many years, veterinarians would purchase from manufacturers bulk drugs which they would then mix to produce drugs which they could use to treat their patients. In 1988, however, the FDA began to regulate this area much more closely. *See United States v. Rossoff*, 806 F.Supp. 200, 201 (C.D.Ill.1992).

In the present case, the government has filed a motion seeking approval of proposed jury instructions. Included in the government's proposed instructions is proposed Instruction No. 10, which would provide:

The law that you are responsible for applying in this case makes no distinction between veterinarians and persons who are not veterinarians. Both are equally subject to the law. There is no exemption for veterinarians.

The government's motion thus puts in issue one of the key disputes between the parties, whether there is a "veterinarian's defense" to the charges advanced in the indictment.

As noted earlier, to compensate for the lack of a satisfactory selection of FDA-approved animal drugs, many veterinarians have historically resorted to mixing their own drugs. In its memorandum in support of the proposed jury instructions, the government's argument centers on two FDA publications upon which it presumed the defendant would rely in advancing a veterinarian's defense. Accordingly, the government argues at length that these publications, FDA Compliance Policy Guidelines 7125.06 and 7125.35, represent internal policy guidelines which cannot be relied upon by the defendant, and in any event would not apply in a case such as the present one where the defendant has transacted in bulk drugs.

In his response to the government's motion, however, Thomas opposes the government's proposed instructions on other, statutory grounds, and does not rely on the FDA's Compliance Policy Guidelines. Thomas argues that the charges of adulteration and misbranding fail under 21 U.S.C. §§ 353(f) and 360(g)(2). The court finds that this argument is in error.

The veterinarian usage provision created by § 353(f) appears to be an exemption from the misbranding provisions of § 352 only—it does not exempt a veterinarian from complying with the requirement of FDA approval for the use of new animal drugs under 21 U.S.C. § 360b. Similarly, the provision contained in § 360(g)(2) only exempts veterinarians from certain registration requirements contained in § 360. It does not excuse a veterinarian from complying with the adulteration requirements of § 360b. *See United States v. Jacobs*, No. CR–F–86–108–REC, 1988–89 Transfer Bind-

er, Food Drug Cosm.L.Rep. (CCH) ¶ 38,112 (E.D.Cal.1989).

Moreover, while § 353(f) may in general create an exemption for certain misbranding charges under § 352, it is a limited exception. The subsection excludes from its scope, for example, drugs which have been dispensed through the mail, or which fail to contain a substitute mandatory label. For present purposes, however, the most important restriction is contained in ¶ (1), which requires that the drugs were dispensed on the "*lawful* written or oral order of a licensed veterinarian." (Emphasis added.)

■ As the FDA correctly observes, and as the case law concludes, bulk animal drugs cannot be lawfully dispensed by a veterinarian. *See United States v. Algon Chemical,* 879 F.2d 1154 (3d Cir.1989); *United States v. 9/1 KG Containers,* 854 F.2d 173 (7th Cir. 1988), *cert. denied,* 489 U.S. 1010, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989). Thomas contends that any comments relating to veterinarians in *Algon Chemical* or *9/1 Chemical* are dicta, since the defendants in both cases were not veterinarians but drug manufacturers or distributors. The court is unable to accept the defendant's contention. Both cases did involve civil actions by the FDA against the manufacturers or distributors of bulk drugs. However, in both cases, the defendants advanced arguments essentially identical to arguments advanced herein by Thomas, that, for example, the FDA's regulations were not intended to apply to, and could not be enforced against, drugs which were destined for use by veterinarians. And, in both cases, the respective courts of appeal rejected those defenses. Far from being dicta, the comments of both courts are an integral part of the courts' reasoning in both cases, and are directly relevant here.

A recent case involving a criminal prosecution of two veterinarians for adulteration and misbranding has also rejected such a "veterinarian defense." *United States v. Jacobs,* ¶ 38,112. Thomas has also attempted to distinguish this decision, arguing for example that *Jacobs* involved a case of misbranding under 21 U.S.C. § 352(a) (involving actual false or deceptive labeling), instead of the crime charged here involving 21 U.S.C.

§ 352(b) and (f) (involving the failure to include certain required information on the labeling). Thomas reads the opinion in *Jacobs* as suggesting that the court would have reached a different result if it had been presented with a claim of mislabeling outside of subsection (a).

This is not precisely what the *Jacobs* court held. The defendants argued that as veterinarians they were exempt from the Act's labeling requirements under 21 U.S.C. § 353(b)(2). The court did not state that the defendants' argument would have been correct if the case had involved a charge of misbranding that fell outside the scope of § 352(a). Rather, it directly rejected the defendants' claimed defense. The court concluded, by adding "[m]oreover," that the defendants' argument made no sense at all in a case of § 352(a) misbranding, rather than a claim of misbranding under § 352(f).

The court finds that the government's proposed Instruction No. 10 fairly states the law and will grant the government's motion as to that instruction. The remaining instructions advanced by the government relate to other matters of law, more general in nature and less controversial in substance, which will be more appropriately taken up by the court in an instruction conference prior to trial. The court will reserve ruling on the remaining proposed instructions until that time.

The defendant Thomas has also filed a motion for a bill of particulars, arguing that the superseding indictment contains unnecessary surplusage. As the court indicated at the hearing in which the present matters were taken up, the contested language in the indictment does not appear to be unfair or prejudicial to the defendant, and accordingly the motion will be denied.

IT IS ACCORDINGLY ORDERED this 3rd day of December, 1993, that the government's motion in support of proposed jury instructions is granted as to proposed Instruction No. 10. Defendant's motion for a bill of particulars is hereby denied.