J-A23017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD KRISTA | : | |
| | : | |
| Appellant | : | No. 43 WDA 2018 |

Appeal from the Order December 8, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0007547-2012

BEFORE:  BOWES, J., SHOGAN, J., and STABILE, J.

MEMORANDUM BY SHOGAN, J.:                **FILED FEBRUARY 15, 2019**

Appellant, Richard Krista, appeals from the order denying his motion to bar retrial and dismiss charges.  We affirm.

Appellant was charged with two counts of homicide pertaining to his involvement in the shooting of two men, which took place on May 11, 2012, behind a housing project in West Mifflin.  Appellant's first trial, which concluded on October 10, 2013, ended in a mistrial due to a hung jury.  His second trial also ended in a mistrial on January 23, 2014, due to a hung jury.  Appellant was tried a third time.  However, during defense counsel's cross-examination of a police detective, the Commonwealth objected to a series of questions and suggested that Appellant can take the witness stand and explain what happened on the night in question.  Appellant moved for a mistrial, and the trial court gave a curative instruction the following day.  On June 5, 2014,

at the conclusion of the trial, Appellant was convicted of two counts of first-degree murder. On July 29, 2014, Appellant was sentenced to serve two consecutive terms of life imprisonment without parole. Appellant then filed a direct appeal. On August 9, 2016, this Court vacated Appellant's judgment of sentence and remanded for a new trial after determining the prosecutor impermissibly commented on Appellant's decision not to testify, in violation of Appellant's Fifth Amendment rights, and the misconduct was not rendered harmless by the circumstances under which it was made, or by the trial court's delayed curative instruction. ***Commonwealth v. Krista***, 156 A.3d 332, 174 WDA 2015 (Pa. Super. 2016) (unpublished memorandum at 26).

Upon remand, Appellant filed a motion to bar retrial and dismiss the charges. The trial court held a hearing and denied the motion on December 8, 2017. Pursuant to Pa.R.Crim.P. 587(b)(4), the trial court stated in its order that Appellant's motion was not frivolous. This timely interlocutory appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. Did the Prosecutor Intentionally Engage in Egregious Misconduct to Deprive Appellant of his Right to a Fair Trial When, Knowing Appellant Was Not Going to Testify in his Defense, the Prosecutor Impermissibly Commented on Appellant's Silence by Challenging Him to "Explain" Himself to the Jury on a Critical Point of Contention, Such that Double Jeopardy Bars a Fourth Trial in this Case?

II. Whether this Court Should Bar Retrial and Dismiss the Charges Based upon Principles of Fundamental Fairness?

- 2 -

Appellant's Brief at 5.

Appellant first argues that principles of double jeopardy bar a fourth trial in this matter. Appellant's Brief at 23-40. Appellant asserts the prosecutor engaged in misconduct in an attempt to strip Appellant of his right to remain silent and to deprive him of a fair trial, claiming that the comment challenged the presumption of innocence protected under the Pennsylvania and United States Constitutions. Appellant notes that the prosecutor was aware that Appellant chose to exercise his right to remain silent at his third trial. Appellant contends that the intentional comment regarding Appellant's silence exploited the prosecutor's knowledge to secure a conviction.

Appellant's issue invokes the protections afforded by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution as well as Article I, Section 10 of the Pennsylvania Constitution.[1] As such, our scope and standard of review are as follows:

> An appeal grounded in double jeopardy raises a question of constitutional law. This [C]ourt's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*.

---

[1] The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Similarly, Article I, Section 10 of the Pennsylvania Constitution states in relevant part, "No person shall, for the same offense, be twice put in jeopardy of life or limb[.]"

*Commonwealth v. Vargas*, 947 A.2d 777, 780 (Pa. Super. 2008) (citations omitted).

"Double jeopardy, as it relates to prosecutorial misconduct, will attach where the prosecutorial misconduct is calculated to trigger a mistrial." *Commonwealth v. Diehl*, 615 A.2d 690, 693 (Pa. 1992). We consider the following in addressing double jeopardy claims:

> The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution[,] and Article 1, § 10 of the Pennsylvania Constitution[,] protect a defendant from repeated criminal prosecutions for the same offense. Ordinarily, the law permits retrial when the defendant successfully moves for mistrial. If, however, the prosecution engages in certain forms of intentional misconduct, the Double Jeopardy Clause bars retrial. Article I, § 10, which our Supreme Court has construed more broadly than its federal counterpart, bars retrial not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. An error by a prosecutor does not deprive the defendant of a fair trial. However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied.

*Commonwealth v. Graham*, 109 A.3d 733, 736 (Pa. Super. 2015) (quotation marks, brackets, and citations omitted).

As our Supreme Court expressed in *Commonwealth v. Smith*, 615 A.2d 321 (Pa. 1980):

> [T]he double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is **intended** to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is **intentionally** undertaken to prejudice the defendant to the point of the denial of a fair trial.

- 4 -

**Smith**, 615 A.2d at 325 (emphases added).  Therefore, "whether a dismissal is warranted turns on whether the Commonwealth intended to deprive the defendant of a fair trial."  **Commonwealth v. Adams**, 177 A.3d 359, 372 (Pa. Super. 2017).

> As the Court in [**Commonwealth v.**] **Graham**[, 109 A.3d 733 (Pa. Super. 2015),] explained, dismissal is an appropriate remedy in such a case because a mistrial would be an inadequate remedy for systematic intentional prosecutorial misconduct:
>
>> By and large, most forms of undue prejudice caused by inadvertent prosecutorial error or misconduct can be remedied in individual cases by retrial.  Intentional prosecutorial misconduct, on the other hand, raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial.  As this Court has often repeated, "a fair trial is not simply a lofty goal, it is a constitutional mandate, . . . and where that constitutional mandate is ignored by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity."
>
> **Graham**, 109 A.3d at 736 (quoting **Commonwealth v. Kearns**, 70 A.3d 881, 884-85 (Pa. Super. 2013), *appeal denied*, 84 A.3d 1063 (Pa. 2014)).  On the other hand, as our Supreme Court also has stated:
>
>> Dismissal of criminal charges punishes not only the prosecutor . . . but also the public at large, since the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law.  Thus, the sanction of dismissal of criminal charges should be utilized only in the most blatant cases.  Given the public policy goal of protecting the public from criminal conduct, a trial court should consider dismissal of charges where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed.

[**Commonwealth v.**] **Burke**, 781 A.2d [1136,] 1144 [(Pa. 2001)] (quoting **Commonwealth v. Shaffer**, 712 A.2d 749, 752 (Pa. 1998)).

**Adams**, 177 A.3d at 372.

As we explained in **Burke**:

An example of egregious prosecutorial misconduct which has been deemed sufficient to warrant dismissal may be found in **Smith**. In **Smith**, the Commonwealth deliberately withheld from a capital defendant: (1) the existence of an agreement with its chief witness pursuant to which he received lenient treatment at sentencing on unrelated charges in exchange for his testimony, and (2) material, exculpatory physical evidence that it had discovered mid-trial. The physical evidence consisted of grains of sand that were found between the toes of the murder victim at her autopsy. The sand was consistent with Smith's defense that the crime had been committed in Cape May, New Jersey, by others, and not by him in Pennsylvania, as the Commonwealth had alleged. At trial, when a Pennsylvania state trooper testified on cross-examination that granular particles which looked like sand had been removed from the victim's body, the Commonwealth implied that [the trooper] had fabricated his testimony and the trial prosecutor recommended to his superior that he investigate the feasibility of prosecuting the state trooper for perjury. While the trial was still in progress, the state police discovered the adhesive "lifters" that had been used to remove and retain the sand from the victim's feet. The Commonwealth, however, failed to disclose this evidence and, indeed, continued to suppress the evidence for over two years while the case was on direct appeal to this Court. In light of this deliberate, bad faith failure to disclose potentially exculpatory evidence, this Court discharged Smith under the double jeopardy clause of the Pennsylvania Constitution, opining that "it would be hard to imagine more egregious prosecutorial tactics." [**Smith**,] … 615 A.2d at 323.

On the other hand, a mere finding of willful prosecutorial misconduct will not necessarily warrant dismissal of charges. For example, in **Commonwealth v. Moose**, … 602 A.2d 1265 ([Pa.] 1992), [the Pennsylvania Supreme] Court found that the prosecutor's failure to inform defense counsel of a witness's police statement which contained incriminating admissions allegedly

made by the defendant amounted to a "willful violation of Rule 305." **Id**. at … 1274. The Court held that "the district attorney's conduct raised significant ethical concerns" and referred the matter to the Disciplinary Board for its consideration. **Id**. … at 1274 n.8 & 1276 n.12. Nonetheless, the Court did not dismiss the charges against Moose, but rather remanded the matter for a new trial. **Id**. … at 1276.

**Burke**, 781 A.2d at 1144-1145.

The above language from **Burke** reflects a consistent approach in this Commonwealth that retrial should be barred when the prosecutor's misconduct is an act of deliberate overreaching and not an isolated incident. **See, e.g., Commonwealth v. Martorano**, 741 A.2d 1221, 1223 (Pa. 1999) (retrial was barred where the "prosecutor acted in bad faith throughout the trial, consistently making reference to evidence that the trial court had ruled inadmissible, continually defying the trial court's rulings on objections," and repeatedly insisting that there was physical evidence that the prosecutor knew did not exist); **Commonwealth v. Anderson**, 38 A.3d 828 (Pa. Super. 2011) (retrial was barred where prosecutor engaged in a pattern of pervasive misconduct that culminated in a meeting during which the prosecutor coached the victim-witness, a pattern that demonstrated the prosecutor intentionally acted to prejudice the defendant).

Our review of the certified record reveals that, at Appellant's third trial in this matter, the following transpired during defense counsel's cross-examination of Detective Patrick Kinavey:[2]

Q. Detective Kinavey, this [crime] happened on May 11, 2012; correct?

A. That is correct.

Q. And that was a Friday night; correct?

A. Yes.

Q. So one day later was Saturday. Sunday, two days. Monday, three days. Correct?

A. That is correct.

Q. You said it was six days. That's when you recall me having contacted Detective Foley and turned [Appellant] in upon learning that there was a warrant for him? You recall that; don't you?

[Prosecutor]: Objection, Your Honor. [Defense Counsel] is testifying.

[Defense Counsel]: I'm asking.

[Prosecutor]: If [Appellant] wants to take the stand and explain what happened, he can.

[Trial Court]: Gentlemen, approach.

N.T., 5/28/14-6/5/14 (Vol. I), at 312. The record does not indicate that the comment was directed to the jury, but rather was a statement made to the trial court following the prosecutor's objection. Moreover, the record does not

_____

[2] It is undisputed that defense counsel negotiated Appellant's eventual surrender to the police. The surrender occurred six days after the murder.

reflect, and Appellant does not assert, that the prosecutor made any additional references to Appellant's silence.

With regard to Appellant's double jeopardy claim and whether the prosecutor's comment should bar retrial, the trial court specifically stated in its written opinion: "Following a hearing [to bar retrial], [the trial c]ourt found no evidence that the prosecutor's statement, while certainly egregious, was intended to deny a fair trial." Trial Court Opinion, 3/6/18, at 5.

At the completion of the hearing on Appellant's motion, the trial court made the following pronouncement:

> With regard to my reading of the case law and the arguments in this case, the statement of Judge Williams regarding his understanding and the statements made by the Superior Court in their opinion, I would deny the motion, and **find specifically that there is no evidence that the prosecutor's conduct was intended to deny a fair trial**.
>
> And I cite specifically to the guidelines for bad faith that have been set forth in some of the case law. The Superior Court indicated that while the statement was not a fair response to misconduct on the defense counsel's part, it was a single incident, no subsequent attempts by the prosecutor to exploit the Appella[nt]'s silence and the comment did arise in the context of a discussion with the Judge and opposing counsel, not a direct address to the jury, such as during opening or closing arguments. That's contained on Page 19 of the Superior Court's opinion.
>
> * * *
>
> So those comments, as well as Judge Williams' comments, and my reading of the case law and circumstances in this case, the fact that the jury then did convict, and there is nothing to indicate that the Commonwealth believed that their case was going poorly at that moment, and the fact that the Superior Court actually took a good deal of time and consideration in addressing whether or not a curative instruction, if issued promptly, may, in

- 9 -

fact, have cured the prejudice, but because of the great delay in issuing the curative instruction, that did weigh in their determination that the curative instruction, under the circumstances of this case, was too late to preclude possible prejudice.

* * *

I do think that the tensions were high; the parties and counsel were, both of them at that point, let's say, pushing each other's buttons, and **while it was not a proper response, it was not a response calculated to create a mistrial or deny a fair trial, but rather an improper statement made out of frustration with defense counsel's questioning**.

**I cannot find, despite the clear violation of [Appellant's] rights, that the prosecutor intentionally undertook to make the statement to deny a fair trial in this case**.

N.T., 12/8/17, at 22-25 (emphases added).

Likewise, upon review of the certified record, we are constrained to conclude that there is insufficient evidence to demonstrate that the prosecutor made the statement with the intention of provoking a mistrial. The prosecutor's conduct in making a single statement does not approach that of the deliberate, bad faith, prosecutorial misconduct that warrants dismissal of charges under *Smith*. There is no evidence of deliberate overreaching by the Commonwealth. Although Appellant offers speculation regarding the prosecutor's motives in making the statement, there is no evidence supporting his assertions. Hence, the error in this case does not approach the egregious and intentional nature of the conduct required to bar a retrial. Accordingly, Appellant's claim fails.

- 10 -

Appellant also argues that retrial in this matter should be barred in order to protect and enforce fundamental fairness. Appellant's Brief at 40-42. Appellant contends that, because his first two trials ended in hung juries, retrial should be prohibited and the charges dismissed. *Id*. at 42.

In support of his argument, Appellant cites two federal district court cases and two decisions issued by supreme courts of two of our sister states. *United States v. Ingram*, 412 F.Supp. 384 (D.D.C. 1976), *United States v. Rossoff*, 806 F.Supp. 200 (C.D.Ill. 1992), *State v. Moriwake*, 647 P.2d 705 (Haw. 1982), and *State v. Abbati*, 493 A.2d 513 (N.J. 1985). Our Supreme Court has explained that inferior federal court decisions, issued by district courts and circuit courts of appeals, are not binding within this Commonwealth. *Stone Crushed Partnership v. Jackson*, 908 A.2d 875, 883 n.10 (Pa. 2006). Rather, such decisions are to be treated as persuasive. *Id*. Moreover, "[w]hile it is a truism that decisions of sister states are not binding precedent on this Court, they may be persuasive authority[.]" *Commonwealth v. National Bank & Trust Co*, 364 A.2d 1331, 1335 (Pa. 1976) (citations omitted). *See also Eckman v. Erie Insurance Exchange*, 21 A.3d 1203, 1207 (Pa. Super. 2011) (stating that "this Court is not bound by the decisions of federal courts, other than the United States Supreme Court, or the decisions of other states' courts"). Appellant directs us to no Pennsylvania authority to support his position that a retrial following two hung juries should be precluded on the basis of fundamental fairness. However,

there are multiple instances wherein this Court has permitted fourth jury trials to commence in criminal matters and also affirmed convictions following fourth jury trials. *See, e.g., Commonwealth v. Tielsch*, 934 A.2d 81 (Pa. Super. 2007) (affirming the appellant's conviction of third-degree murder at fourth jury trial, following three prior deadlocked jury trials); *Commonwealth v. Perrin*, 414 A.2d 650 (Pa. Super. 1979) (concluding that double jeopardy did not preclude fourth jury trial).

Upon review of Pennsylvania case law, as well as the non-binding authority cited by Appellant, we conclude that there is no bright-line rule that compels us to bar a retrial on the basis of fundamental fairness. Moreover, we refuse to create such a ruling in this instance. Hence, we decline Appellant's invitation to exercise our discretion to preclude a fourth trial and dismiss the charges.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/2019

- 12 -